**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Javier Romero, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-CV-2175 |
| v. | ) | |
| | ) | |
| The Village of Alsip, and Alsip | ) | |
| Police Officers T. Jusino, and | ) | |
| V. Gonzalez, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' MOTION FOR JUDMGENT ON THE PLEADINGS</u>**

Defendants Tyler Jusino, Vincent Gonzalez, and the Village of Alsip, by and through one

of their attorneys, Lance E. Neyland, request that this court enter judgment on the pleadings in

their favor and against Plaintiff Javier Romero pursuant to Federal Rule of Civil Procedure 12(c).

In support thereof, Defendants state as follows:

**<u>INTRODUCTION</u>**

On March 15, 2024, Plaintiff, Javier Romero, filed the instant complaint alleging that the

Defendants violated his rights under the Fourth Amendment and Illinois State law when they

stopped him, detained him, and handcuffed him on January 26, 2024. (Dkt. 1).

According to Plaintiff, he was legally in a parking lot when the Defendant officers seized

him by displaying their handguns, ordered him out of his vehicle and immediately handcuffed

him. (Dkt. 1, ¶¶ 7-10). Plaintiff claims that Defendants "used an unnecessary and unreasonable

amount of force" when handcuffing him. (Dkt. 1, ¶ 11). Plaintiff asserts that these actions

violated his rights under Illinois State Law and the Fourth Amendment because the Defendants

took these actions with "no legal cause." (Dkt. 1, ¶ 12). As a result, Plaintiff brings claims

1

pursuant to § 1983 for an unlawful seizure (Count I) and excessive force (Count II). Plaintiff also brings Illinois State Law claims for False Arrest (Count III) and Indemnification (Count IV[1]).

On May 10, 2024, Defendants answered the Complaint and asserted affirmative defenses. (Dkt. 11). In their answer and affirmative defenses, Defendants assert, generally, that they stopped and detained Plaintiff because his vehicle, wardrobe, and physical description matched that of a suspect for whom the Defendants were searching based on a 9-1-1 call reporting that the suspect had brandished a firearm at another person in the area where Plaintiff was located. (*See generally* Dkt. 11). Defendants further assert that they did not use any force other than the minimal force necessary to secure Plaintiff into handcuffs, and that they released Plaintiff from their custody as soon as they became aware that Plaintiff was not the suspect in question. (*Id.*). Based on the above information, Defendants denied Plaintiff's allegations of wrongdoing and asserted several affirmative defenses, including qualified immunity. (Dkt. 11).

A ruling on the issue of qualified immunity should be made early in the proceedings "so that the costs and expenses of trial are avoided where the defense is dispositive." *Marshall v. Fries*, 2019 WL 4062549 *2 (N.D. Ill. 8/28/19) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).

Defendants qualified immunity defense is dispositive to all of the issues in this case and can be determined based on the pleadings and the documents referenced therein. As such, this Court should grant judgment in favor of the Defendants on the pleadings.

## **LEGAL STANDARD**

The court evaluates a Rule 12(c) motion under "the same standard as a Rule 12(b)(6) motion." *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 757 n. 1 (7th Cir. 2006). To

---

[1] Plaintiff's indemnification Count is labelled as an additional Count III in his complaint, but is more properly labelled as Count IV.

survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

The defense of qualified immunity is a question of law to be decided by the Court. *Maltby v. Winston*, 36 F.3d 548, 554 (7th Cir. 1994). "[Q]ualified immunity is an affirmative defense, [and] the plaintiff has the burden of defeating it once defendants raise it." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). "[T]he proper vehicle for dismissal based on an affirmative defense is a Rule 12(c) motion for judgment on the pleadings." *Scott v. City of Kewanee,* 2014 WL 1302025, at *5 (C.D. Ill. 2014) (*citing Carr v. Tillery,* 591 F.3d 909, 912-13 (7th Cir. 2010) and *McCready v. eBay, Inc.,* 453 F.3d 882, 892 n.2 (7th Cir. 2006)).

## ARGUMENT

### I.     Defendants are entitled to Qualified Immunity for Plaintiff's Federal Claims

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callagan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield the officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The qualified immunity defense "provides ample room for mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). An official is protected by qualified immunity unless the plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly

established at the time of the challenged conduct. *Kemp v. Liebel*, 877 F.3d 346, 350-51 (7th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

To defeat a qualified immunity defense, the burden is on the Plaintiff to demonstrate that the alleged violation of his rights was "clearly established." *Kemp*, 877 F.3d at 351. To be clearly established, "the rights contours must be sufficiently clear that every reasonable official would have understood what he is doing violates that right. *Id.* (internal quotations omitted). "The crucial question is whether the official acted reasonably in the particular circumstances that he or she faced." *Id.*

The first step in the qualified immunity inquiry is to define the right allegedly violated with "the appropriate level of specificity." *Id.* "The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality." *Id.* (internal quotations and citations omitted). And "the Seventh Circuit has long held that the test of immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Id.* (internal quotations and citations omitted). As applied here, Defendants are entitled to qualified immunity for Plaintiff's brings Fourth Amendment claims for unlawful seizure (Count I) and excessive force (Count II).

### A. Defendants did not violate any of Plaintiff's clearly established Constitutional rights when they stopped and detained him.

Count I of Plaintiff's complaint alleges that the officers committed an unlawful seizure "in violation of Plaintiff's Fourth Amendment rights." (Dkt. 1, ¶ 23). Plaintiff alleges that the seizure began when the officers "order[ed] Plaintiff out of his vehicle while displaying their handguns" and then "immediately placed [Plaintiff] in handcuffs." (Dkt. 1, ¶¶ 8, 10).

In answering, Defendants admitted, generally, that they displayed their firearms when Plaintiff exited the vehicle and that they placed him into handcuffs. (Dkt. 11, ¶¶ 8, 10). In further

answering, Defendants referred to 9-1-1 audio, surveillance video, and an incident report and asserted that they detained Plaintiff because his vehicle, license plate, clothing, and physical appearance matched that of an armed crime suspect for whom they were searching for in the area. (*See*, Dkt. 11, **Exh. A-D**; and Dkt. 11, Affirmative Defenses ¶¶ 1-19).

Defendants are entitled to qualified immunity under these circumstances. While there is, generally, a constitutional right to be free from being detained by the police without probable cause, there is no clear case precedent that has held it is unconstitutional for police officers to stop and detain a subject that the officers reasonably believe is a crime suspect while the officers investigate whether or not the subject is the crime suspect for whom the officers in question are searching. In fact, precedent specifically establishes the opposite.

A pretrial detention is a "seizure" under the Fourth Amendment and is justified only if there is "probable cause" to believe that the detainee has committed a crime. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021); *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (*citing Manuel v. City of Joliet* (*Manuel I*), 137 S. Ct. 911, 918 (2017)).

"[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). This "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). It is "assessed objectively" based on "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

Probable cause to arrest does not demand certainty, but, rather, deals in probabilities. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (*citing Illinois v.*

*Gates*, 462 U.S. at 231). The probable cause inquiry is an objective one, because an officer's "subjective state of mind and beliefs are irrelevant." *Id.* (*citing Whren v. United States*, 517 U.S. 806, 813 (1996)). Thus, courts look to the officer's knowledge at the time of the arrest and determine whether those facts and circumstances amount to probable cause from the standpoint of an "objectively reasonable police officer." *Id.* (*quoting Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[P]robable cause depends not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person ***in the position of the arresting officer*** – seeing what he saw, hearing what he heard." *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7ᵗʰ Cir. 2010) [***emphasis added***]. It is a "fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances at the time of arrest." *United States v. Shields*, 789 F.3d 733, 746 (7ᵗʰ Cir. 2015).

An officer has probable cause to arrest if, "at the time of the arrest, the 'facts and circumstances within the officer's knowledge...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wagner v. Washington County,* 493 F.3d 833, 836 (7ᵗʰ Cir. 2007). Generally, probable cause can be based on a single witness, "unless the officer has a reason to question the witness' account." *Reynolds v. Jamison,* 488 F.3d 756, 765 (7ᵗʰ Cir. 2007). Probable cause is a "'practical, nontechnical conception that affords the best compromise between the interests of individual liberty and effective law enforcement." *United States v. Mounts*, 248 F.3d 712, 715 (7ᵗʰ Cir. 2001) (*quoting Illinois v. Gates*, 462 U.S. at 231).

Existence of probable cause is an absolute defense to a claim for false arrest brought pursuant to 42 U.S.C §1983. *Stokes v. Board of Education of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010).

6

Here, the audio of the 9-1-1 call as well as the incident report attached to the Defendants' answer and affirmative defenses establish that the officers were responding to a report of a person brandishing a gun and threatening the 9-1-1 caller. (*See* Dkt. 11, **Exhibit A** and **B**). Specifically, the report and audio establish that the officers were dispatched to this area with a "quick description of a black Hyundai vehicle with an IL Registration of DP37505." (Dkt. 11, **Exh. A** and **B**). The driver of the vehicle "reportedly pointed a firearm at another driver" and was "attempting to block the [caller's car] in at the Speedway gas station located at the intersection of 127th St and S. Pulaski Rd." (*Id.*). Dispatch also informed the officers that the suspect driver was a "male Hispanic wearing a black hoodie." (*Id.*). Upon arrival to the intersections of 127th St. and S. Pulaski Rd., the officers witnessed two cars, one being a "black SUV" enter a gas station parking lot "at a high rate of speed." (Dkt. 11, **Exh. B**). This initial encounter is also captured on the video exhibits attached to Defendants' answer. (Dkt. 11, **Exh. C** at 6:53:30-6:54:00). The officers then "pulled into the parking lot to investigate further." (Dkt. 11, **Exh. B**). At that point, the officers watched the SUV pull into a parking spot and observed "a partial IL Registration of DP." (*Id.*). The officers further observed that the driver of the SUV "was a male Hispanic, wearing a black hoodie and a black coat." (*Id.*). [2] Once again, this initial encounter is captured on the video exhibit. (Dkt. 11, **Exh. D** at 6:54:01-6:54:05). It's at that point that the officers drew weapons and ordered Plaintiff to raise his hands, to which Plaintiff complied. As is discussed in more detail *infra*, the officers then handcuffed Plaintiff while they ran his license plate. (Dkt. 11, **Exh. D** at 6:54:06-6:55:00). Once the plate came back and the officers realized that they had detained the wrong person, Plaintiff was released. (Dkt. 11, **Exh.**

---

[2] Defendants recognize that an incident report is not sworn testimony. However, Plaintiff cannot reasonably dispute that he is an Hispanic male, that he was wearing a dark hoodie and coat, and that he was driving an SUV with a partial license plate of DP at the time of this incident.

**B** and **D**). Plaintiff was never formally placed under arrest or charged with any offense, and was never placed in a police car. (Dkt. 11, **Exh. D** at 6:55:00-7:08:00).

These actions do not constitute an unreasonable seizure—otherwise known as false arrest—as the officers had probable cause to detain Plaintiff based on the information available to the officers at the time, and the case law supports Defendants' qualified immunity defense.

*Terry v. Ohio*, and the decades of precedent that follows, establishes that an officer is justified in stopping and detaining a person to investigate a crime, especially when the officer reasonably suspects that the person is armed. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 24 (1968) ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."). Here, where the Officers were acting on a report that a suspect was armed with a gun and had been threatening another person with that gun, there is no question that it would be reasonable for the officers to stop and briefly detain the suspect in handcuffs to investigate.

As is now known, Plaintiff was not the suspect for whom the police were searching.[3] Even so, case law establishes that the officers' actions were not unreasonable.

For example, in *Hill v. California*, police officers arrested a person that matched the physical description of a robbery suspect and was found at the suspect's apartment. *Hill v. California*, 401 U.S. 797, 799 (1971). At the time that the officers made the arrest, the person informed the officers that he was not the suspect, and even produced identification showing that he had a different name than the suspect. *Id*. The officers "were unimpressed and proceeded to

---

[3] The officers later arrested the correct suspect.

search" the area for evidence of the robbery and arrested the plaintiff. *Id*. The Court held that the officers' actions, although "quite wrong as it turned out," did not violate the Fourth Amendment because "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest" as "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.* at 802, 804; *see also Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006) (a police officer did not subject a plaintiff to false arrest when the officer mistakenly arrested the plaintiff for an outstanding warrant that was for a different person with a similar name and a matching physical description.).

Courts have held that mistaken arrests do not violate the Fourth Amendment even in more obvious situations. In *Johnson v. Miller*, police officers twice arrested the plaintiff, "a five-foot-five white [female]" when the description of the suspect was "a black female, five foot seven and weighing 172 pounds[.]" *Johnson v. Miller,* 680 F.2d 39, 40 (7th Cir.1982). The court acknowledged that the officers "perhaps [acted] carelessly" when they failed to notice the discrepancy. However, that "is not enough to bring Section 1983 into play." *Id.* at 42. If it were, "many a criminal will slip away while the officer anxiously compares the description…and radios back any discrepancies to his headquarters for instructions." *Id.* at 41.

As applied here, the officers were responding to a report of a suspect brandishing a gun. Plaintiff was located in the area of the report, Plaintiff was driving a car that matched the general description and had a license plate partially matching the suspect's car, Plaintiff generally matched the physical description of the suspect, and the Plaintiff was wearing similar clothes as the suspect. No reasonable person could find that the officers falsely arrested Plaintiff under

these circumstances. Certainly, where the case law establishes that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest"—*Hill*, 401 U.S. at 802—there is no clearly established law to support a claim that detaining Plaintiff in this way violated his clearly established constitutional rights. The Officers are entitled to qualified immunity for this claim.

### B. Defendants did not violate any of Plaintiff's clearly established Constitutional rights when they handcuffed him.

Plaintiff's excessive force claim in Count II of his complaint is based on his allegation that he was injured while being handcuffed. (Dkt. 1, ¶¶11, 26). Plaintiff asserts that the Defendants used "unnecessary and unreasonable physical force" while handcuffing him. (*Id.*). However, Plaintiff provides no specifics regarding what was "unnecessary and unreasonable" about the Defendants' actions. In answering, Defendants admit they handcuffed Plaintiff, but deny they used any excessive force when doing so. (Dkt. 11, ¶¶ 10, 11, 26). In further answering, Defendants refer to surveillance video that shows Officer Jusino handcuffing Plaintiff and assert that the video shows only that Officer Jusino grabbed Plaintiff's wrists and placed them into handcuffs and does not indicate that any excessive force occurred. (Dkt. 11, **Exh. D**, affirmative defenses, ¶¶ 1-19).

Defendants are entitled to qualified immunity under these circumstances. While there is a constitutional right to be free from unnecessary and unreasonable physical force, there is no clear case precedent that has held it is unconstitutionally excessive force for officers to grab a person's wrists to place them in handcuffs. In fact, precedent specifically establishes the opposite.

A plaintiff's claim that officers used excessive force during an arrest is evaluated under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). An officer "has the right to use some

degree of physical force or threat of force to effectuate the arrest." *Stainback*, 569 F.3d at 772. Assessing the reasonableness of the force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. (internal citations and quotations omitted). Courts look to the circumstances surrounding the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Id.*

The court "must view these facts as they would have appeared to a reasonable officer at the scene" and "must recognize that officers often need to make split-second judgments based on rapidly developing events." *Stainback*, 569 F.3d at 772. "In this respect [the Seventh Circuit's] cases indicate that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Id.*

An officer's knowledge that the act of handcuffing "unnecessarily will harm a particular individual will depend on the circumstances of the arrest." *Id.* "In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself." *Id.* In others, "it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual." *Id.* "For example, an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems." *Id.* "However, a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Id.* at 773.

Here, the video attached to Defendants' answer captures the entirety of Plaintiff being handcuffed. (*See* Dkt. 11, *Facts Common to all Affirmative Defenses* ¶ 10; **Exh. D** at 6:54:06-6:55:00). As the video clearly shows, Plaintiff placed his hands behind his head, went down to his knees, and the officers then approached him and Officer Jusino placed Plaintiff into handcuffs by taking hold of Plaintiff's right arm and bringing it behind his back, then taking hold of Plaintiff's left arm and bringing it behind his back, and then securing both of Plaintiff's wrists into handcuffs. (**Exh. D**, at 6:54:06-6:55:00). Officer Jusino then assisted Plaintiff in standing up and they walked to the front of Plaintiff's vehicle. (Dkt. 11, *Facts Common to all Affirmative Defenses* ¶ 11; **Exh. D** at 6:55:00-6:55:24). The officer did not, at any point, use any force during this encounter other than the minimal force that was necessary to secure Plaintiff's arms behind his back and into handcuffs and the case law supports Defendants' qualified immunity defense.

For example, in *Stainback*, officers placed the plaintiff in handcuffs by grabbing his arms and putting them behind his back and into handcuffs. *Stainback*, 569 F.3d at 769. The officers did so despite the plaintiff telling them not to do so because he might get hurt. *Id.* After the plaintiff was handcuffed, he was placed in a police car where he "complained that the handcuffs were hurting his shoulders and asked the Officers to remove them." *Id*. The officers ignored his request and the plaintiff remained in handcuffs for approximately fifteen to twenty minutes. *Id*. As a result, the plaintiff "suffered two torn rotator cuffs, which required surgery and medical treatment." *Id.*

Despite the plaintiff's complaints and injury, the Seventh Circuit held that "the Officer's actions were reasonable under the circumstances" and did not constitute excessive force. *Id.* at 773. The Court reasoned that, although the plaintiff "said that he did not want to be handcuffed because he thought it might hurt" and "complained generally about pain after he was

handcuffed," the "generalized complaints, without any elaboration regarding a preexisting injury or other infirmity, would not have placed a reasonable officer on notice that [the plaintiff] would be injured by those actions." *Id.*

In *Day v. Wooten*, officers detained and handcuffed a plaintiff suspected of shoplifting and running from arrest on foot. *Day v. Wooten*, 947 F.3d 453, 456 (7th Cir. 2020). When the officers apprehended the plaintiff, who was visibly obese and out of breath, they grabbed his hands and placed them behind his back in handcuffs. *Id.* The plaintiff told the officers at that time that he was having trouble breathing. *Id.* at 456-57. While trying to sit the plaintiff up, the officers noticed he was having trouble staying upright and had defecated himself. *Id.* at 457. Eventually, the officers called paramedics and the paramedics evaluated the plaintiff while he remained in handcuffs. *Id.* At some point during the encounter, officers added a second pair of handcuffs. *Id.* After being in handcuffs for approximately 43 minutes, the plaintiff became unresponsive and died. *Id.* at 457-58. After the plaintiff was deceased, an autopsy confirmed that he had an underlying heart condition that may have been exacerbated by the handcuffs. *Id.* Plaintiff's family filed a complaint for excessive force based on the handcuffing, and, on appeal, the Seventh Circuit determined that the officers were entitled to qualified immunity. *See generally, Id.*

In determining that the officers were entitled to qualified immunity, the *Day* Court, relying in part on *Stainback*, reasoned that because the plaintiff did not complain that the handcuffs restricted his breathing and did not inform the officers that he had an underlying heart condition, the Plaintiff's "right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury was not violated." *Day*, 947 F.3d at 462 (internal quotations omitted). The Court held that there is "no Seventh Circuit precedent clearly

13

establishing…the right of an out-of-breath arrestee to not have his hands cuffed behind his back after he complains of difficulty breathing[.]" *Id.* at 463. As such, it was "not clearly established that the officers' conduct violated [the deceased's] rights" and the Court granted the officers qualified immunity. *Id.* at 463-64. *See also Gibson v. Picou*, 101 Fed. Appx. 154, 157 (7th Cir. 2004) (unpublished) ("without an 'indication that an arrest was effectuated in an unusual or improper manner,' an excessive force claim that handcuffs were applied too tightly 'has no possible merit.'") (quoting and citing *Braun v. Badwin*, 346 F.3d 761, 763 (7th Cir. 2003)).

Applying this precedent to the case at hand, Plaintiff makes nothing more than a generalized complaint that the officers used "unnecessary and unreasonable" force and does not, at any point, assert that he informed the officers that he had any preexisting infirmity such that he was particularly susceptible to injury from being handcuffed. (Dkt. 1, ¶¶ 11, 26). In fact, Plaintiff does not even claim that he sought medical treatment or specify his injury in any way other than that the handcuffing "resulted in physical injury." (Dkt. 1, ¶ 26).

Under these circumstances, no reasonable person could find that the officers committed excessive force when handcuffing Plaintiff, and there is no clearly established law to support any claim that handcuffing Plaintiff violated any of Plaintiff's clearly established constitutional rights. The Officers are entitled to qualified immunity for this claim.

## II. Plaintiff's State Law claims cannot survive where his Federal claims fail.

Plaintiff brings Illinois State law claims for False Arrest (Count III) and indemnification (Count IV). These state law claims must be dismissed where the Federal claims fail.

Although a False Arrest claim under Illinois State Law is technically its own claim separate from a claim for unlawful seizure under the Fourth Amendment, "[t]he existence of probable cause also defeats a false-arrest claim under Illinois law" and courts routinely "analyze

these claims together." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022), *reh'g denied*, No. 20-3227, 2023 WL 2188741 (7th Cir. Feb. 23, 2023); *see also McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("under Illinois law a plaintiff claiming an illegal arrest bears the burden of establishing the absence of probable cause.").

Plaintiff's indemnification claim under 745 ILCS 10/9-102 must also be dismissed, as this claim cannot survive where there is no underlying Illinois State Law claim. *See, e.g. Baden v. City of Wheaton*, No. 09 C 3015, 2010 WL 4931852, at *4 (N.D. Ill. Nov. 24, 2010), *aff'd*, 420 Fed. Appx. 628 (7th Cir. 2011) (unpublished) ("Plaintiff's state-law indemnification claim against the City [] must be dismissed because it is contingent on the success of her other claims, all of which fail."); *Alesia v. Rhee*, No. 19 C 7576, 2020 WL 10459739, at *3 (N.D. Ill. June 10, 2020) ("given that all other claims have been dismissed, [Plaintiff's] indemnification claim against the City must also fail."); *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 798 (C.D. Ill. 2020) ("indemnification claims brought against [public entities] should be dismissed to the extent that the state law claims against the individual Defendants have been dismissed.").

## CONCLUSION

WHEREFORE, for all of the reasons in this motion, this Court should grant Defendants judgment in their favor on the pleadings and for any further relief this court deems appropriate.

Respectfully submitted,

**VILLAGE OF ALSIP, TYLER JUSINO, VINCENT GONZALEZ**

By:    *s/Lance E. Neyland*
One of Defendants' Attorneys
Lance E. Neyland, #6331171
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
T: (847) 291-0200
E: lneyland@ifmklaw.com

15