UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVIER ROMERO, | ) |
| *Plaintiff*, | ) Case No. 1:24-cv-02175 |
| v. | ) Judge Sharon Johnson Coleman |
| THE VILLAGE OF ALSIP, and Alsip Police Officers T. JUSINO, and V. GONZALEZ, | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Javier Romero ("Plaintiff") brings a complaint against Defendants the Village of Alsip and Alsip Police Officers T. Jusino and V. Gonzalez ("Defendant Officers") (collectively, "Defendants") under 28 U.S.C. § 1983 alleging that Defendant Officers violated his Fourth Amendment rights when they placed him in handcuffs during a search for a suspect reported to be threatening a 9-1-1 caller. Defendants answered Plaintiff's complaint, asserted an affirmative defense of qualified immunity along with other affirmative defenses, and filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff subsequently filed an amended complaint providing additional details on the encounter, to which Defendants again answered, reasserted their affirmative defense of qualified immunity, and moved for judgment on the pleadings. For the following reasons, the Court grants Defendants' motion.

**Background**

According to Plaintiff's amended complaint, Dkt. 24, on or about the evening of January 26, 2024, Plaintiff was legally parked in a parking lot located at the intersection of 127th Street and Pulaski Road in the Village of Alsip. At that time and place, Plaintiff exited his vehicle and was seized by uniformed Defendant Officers displaying their handguns and giving verbal orders. Plaintiff complied

with Defendant Officers' orders and was immediately placed in handcuffs by the officers. Plaintiff was eventually released from police custody without being charged with any crime.

This was not a random stop. Prior to seizing Plaintiff, Defendant Officers had received information from a dispatcher that a man wearing a black hood over his head was threatening and chasing a person driving a Jaguar automobile. The caller reported that the man was driving a silverish Hyundai truck and provided a complete license plate number of the automobile in question.

As recognized by both parties, there were discrepancies between the caller's description of the aggressor and Plaintiff. Plaintiff was not wearing a hood over his head when Defendant Officers first encountered Plaintiff. Plaintiff's vehicle was a black GMC brand automobile, with a different license plate number from the Hyundai that was allegedly chasing the caller's Jaguar. Additionally, the Jaguar was not present when Defendant Officers encountered Plaintiff's vehicle. Instead, the caller was still in telephonic contact with the dispatcher and informed the dispatcher that the Hyundai was still following her at a different location.

Plaintiff alleges that because Defendant Officers "did not possess any information indicating that Plaintiff had engaged in any illegal activity" there was no legal cause for his seizure by Defendant Officers. (*Id.*) Plaintiff also alleges that during the course of placing Plaintiff in handcuffs, Defendant Officer Jusino "used an unnecessary and unreasonable amount of force causing physical injury to Plaintiff." (*Id.*) Specifically, Plaintiff alleges that he did not resist being placed in handcuffs, but when Defendant Officer Jusino placed the handcuffs on Plaintiff "his arm was pulled back at an awkward angle and with an excessive amount of force such that it hyperextended and injured Plaintiff's shoulder." (*Id.*) Plaintiff states that he was required to receive medical treatment and physical therapy to treat his shoulder because of this conduct.

Plaintiff filed his first complaint on March 15, 2024, seeking damages for the emotional and physical injuries he suffered during the arrest. Three months later, Defendants filed an answer to this

complaint—attaching the 9-1-1 call audio of the incident, the incident investigation report, and two surveillance videos of the incident alleged in the complaint—and moved for judgment on the pleadings based on an affirmative defense of qualified immunity. On June 18, 2024, Plaintiff filed an amended complaint. In his complaint, Plaintiff alleges two violations of his rights under the Fourth Amendment: one count of unlawful seizure against Defendant Officers and another for excessive use of force. Plaintiff also brings one count of false arrest under Illinois state law against Defendant Officers and an indemnification claim pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9/402, against the Village of Alsip.

As with the prior complaint, Defendants filed an answer to this amended complaint on June 24, 2024—attaching the same exhibits as before—and again filed a motion for judgment on the pleadings. In answering, Defendants admit, generally, that the officers displayed their firearms when Plaintiff exited the vehicle and that they placed him into handcuffs (Dkt. 25.) But they assert that they detained Plaintiff because his vehicle, license plate, clothing, and physical appearance matched that of an armed crime suspect for whom they were searching for in the area and that they did not use any force other than the minimal force necessary to secure Plaintiff into handcuffs. (Dkt. 25, 31.) In their answer, Defendants also assert an affirmative defense of qualified immunity, arguing that a reasonably competent officer objectively viewing the facts and circumstances then confronting Defendant Officers would have believed that the actions taken were objectively reasonable and were within constitutional limits that were clearly established at the time. (Dkt. 25.)

The Court now turns to Defendants' motion.

**Legal Standard**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The "only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is

the same." *Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). A motion for judgment on the pleadings should be granted if it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the movant is entitled to relief. *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). As with a motion to dismiss, on a motion for judgment on the pleadings, the court "draws all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

**Discussion**

*A. Determining the scope of the pleadings*

Before turning to the merits of Defendants' affirmative defense of qualified immunity, the Court must settle the question of what documents it can consider when ruling on the motion.

Defendants attached four exhibits in their answer to Plaintiff's amended complaint: the 9-1-1 call audio of the incident, the incident investigation report, and two surveillance videos of the incident alleged in the complaint. (Dkt. 25, Ex. A–D.) Plaintiff contends that all these exhibits must be excluded from the Court's consideration because they were not included or referenced in Plaintiff's amended complaint. (Dkt. 35.) But Plaintiff conflates the standard for a motion for judgment on the pleadings brought under Rule 12(c) with that of a motion to dismiss brought under Rule 12(b)(6). Seventh Circuit precedent is clear that, consistent with Federal Rule of Civil Procedure 10(c), the "pleadings" for the purposes of a Rule 12(c) motion include "the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co*, 983 F.3d at 312–13 (citing *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (7th Cir. 1998)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").[1] In contrast, a motion to dismiss can be based "only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, n.1 (7th Cir. 2012).

Furthermore, in a motion for judgment on the pleadings, the court "may take into consideration documents incorporated by reference to the pleadings." *Milwaukee Police Ass'n*, 863 F.3d at 640; *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730 (7th Cir. 2002) (explaining that the purpose of the "incorporation by reference" doctrine is "to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents"). In his amended complaint, Plaintiff makes several factual allegations describing the events leading up to his encounter with Defendant Officers:

> Prior to seizing Plaintiff Defendants had received information that a man wearing a black hood over his head was threatening and chasing a person calling police who was driving a Jaguar automobile. The man threatening the caller was reported to be driving a silver Hyundai brand automobile, and the officers were provided with a complete license plate number of the Hyundai brand automobile.
>
> . . . .
>
> Plaintiff's automobile had a different license plate number than the Hyundai that was allegedly chasing the Jaguar. When Defendants encountered Plaintiff's vehicle the Jaguar being operated by the person who called police

---

[1] The term "written instruments" has been understood by courts in this district to include audio and video recordings. *Schimandle v. DeKalb Cnty. Sheriff's Off.*, No. 3:21-CV-50477, 2023 WL 3479184 (N.D. Ill. May 16, 2023) (Johnston, J.), aff'd, 114 F.4th 648 (7th Cir. 2024) (considering surveillance and cell phone videos of the incident in granting defendants' motion for judgment on the pleadings); *see also Brown v. City of Chicago*, 594 F. Supp. 3d 1021, 1028–30 (N.D. Ill. 2022) (Blakey, J.) (collecting cases).

>was not present. At the time Plaintiff was seized by Defendants the caller in the Jaguar, who still was in constant telephonic contact with police, informed police that the silver Hyundai was still following her at a different location.

(Dkt. 24, ¶¶ 9, 10.) While Plaintiff does not provide the source of these factual allegations and uses the passive voice to obscure how Defendant Officers received information about the incident, it is evident from the detail and description of these allegations that they likely come from either the 9-1-1 audio recording, (Dkt. 25, Ex. A), the incident investigation report, (*Id.*, Ex. B), or both. As such, and because Defendants attached these exhibits and the video recording of the incident to their answer, all four exhibits are part of the pleadings and therefore fair game for the Court's consideration of Defendants' motion.

### B. *Plaintiff's Fourth Amendment claims*

Plaintiff brings two Fourth Amendment claims in his complaint. In Count I, Plaintiff alleges that Defendant Officers committed an unlawful seizure when he was confronted by the officers after exiting his vehicle and placed into handcuffs. Then in Count II, Plaintiff further asserts that Defendant Officers used "unnecessary and unreasonable force" when handcuffing him.

Defendants assert qualified immunity as a defense to both claims. To determine whether this defense is available to Defendants, the Court must determine whether the facts—taken in the light most favorable to Plaintiff—show that the officers' conduct violated Plaintiff's clearly established constitutional rights. *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024); *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). For a right to be clearly established, "the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). In conducting this inquiry, "[t]he crucial question is whether the officer acted reasonably in the particular circumstances that he or she faced." *Id.*

The Court address each claim in turn.

1. *Count I: unlawful seizure*

"It is well-established that an arrest without probable cause violates the Fourth Amendment." *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010). Accordingly, "[t]he existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). Plaintiff bears the burden of demonstrating that he was arrested without probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009).

Probable cause to justify an arrest exists if "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott*, 705 F.3d at 714. "Although it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Id.* (citing *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010)). "The probable-cause standard inherently allows room for reasonable mistakes." *Id.* Because police officers operate in the real world, and often in "rapidly unfolding and even chaotic circumstances," *Id.*, courts must view the facts not "as an omniscient observer would perceive them but . . . as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir.2010).

The existence of probable cause depends on the elements of the predicate criminal offense as defined by state law. *DeFillippo,* 443 U.S. 31, 36, 99 S. Ct. 2627, 2631, 61 L. Ed. 2d 343 (1979). Viewing the facts in light most favorable to Plaintiff, Defendant Officers had probable cause to arrest Plaintiff for the conduct described by the 9-1-1 caller. Plaintiff's amended complaint makes clear that

Defendant Officers did not randomly stop Plaintiff but instead were responding to information provided by dispatch of an active car chase between a 9-1-1 caller and an armed suspect near the intersection of 127th and Pulaski. The incident report further explains that Defendant Officers first saw Plaintiff's vehicle when it "entered the parking lot at a high rate of speed" along with a gray sedan. (Dkt. 25, Ex. B.) The Officers then "pulled into the parking lot to investigate further." (*Id.*) Upon entering the parking lot, the officers observed that the license plate on Plaintiff's vehicle had a partial match to that provided by dispatch and saw that the driver was "a male Hispanic, wearing a black hoodie and a black coat." (*Id.*) It is then that Defendant Officers approached Plaintiff and placed him in handcuffs.

Based on the information provided to Defendant Officers by dispatch and gained through their subsequent observations of Plaintiff and his vehicle, the officers were reasonable in believing that Plaintiff was the suspect in question. The fact that Defendant Officers had been told by dispatch that the suspect was armed further supports their decision to handcuff Plaintiff as they confirmed this belief. *See Terry v. Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 1881, 20 L. Ed. 2d 889 (1968) (stating that an officer is permitted to "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm" if the officer is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others").

The fact that there were discrepancies between Plaintiff's vehicle and the vehicle described in the 9-1-1 call, or that ultimately Plaintiff was not the suspect, does not mean that Defendant Officers did not have probable cause to stop Plaintiff. As explained above, probable cause permits reasonable mistakes made by officers when responding to warrants or circumstances at the scene. *See Hill v. California*, 401 U.S. 797, 802, 91 S. Ct. 1106, 1110, 28 L. Ed. 2d 484 (1971) ("[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party,

then the arrest of the second party is a valid arrest."); s*ee also Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006) (collecting cases that "have similarly recognized that discrepancies between an arrest warrant and the arrestee's physical appearance, address, and birth date are often insufficient to create a genuine factual dispute about whether arresting officers had probable cause").

Despite this tolerance for reasonable mistakes, intentionally wrongful or grossly negligent conduct can eliminate the existence of probable cause, and "an officer may not close his or eyes to clearly exculpatory facts" before detaining a suspect. *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 624 (7th Cir. 2010). Such was the case in *Phelan v. Village of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008). There, a law enforcement officer ran a random license check on a white Cadillac sedan driving in front of him. Seeing that the second line of the report relayed that the vehicle registered to the plate was stolen, the officer contacted dispatch and pulled over the Cadillac. It was only after the officer had placed the driver in handcuffs and placed her in his squad car that dispatch told him what he would have known had he read the third line of the report: the stolen vehicle was a Black Honda motorcycle, not a white Cadillac sedan.

The discrepancies emphasized by Plaintiff do not rise to the level of that in *Phelan*. While Plaintiff was not "wearing a black hood over his head," Dkt. 24, he was wearing a black hoodie and a black coat. (Dkt. 25, Ex. B; Ex. C at 2:42–2:44.) And while Plaintiff's vehicle was not a Hyundai, it was an SUV with plates that partially matched those that the caller had provided to dispatch. As the Seventh Circuit noted in *Johnson v. Miller*, "many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions" if officers faced liability under § 1983 if there was "any discrepancy between the description in the warrant and the appearance of the person to be arrested." 680 F.2d 39, 41 (7th Cir. 1982). Given the exigency of the circumstances and viewing

the available facts from the perspective of a reasonable person in their position, it was reasonable for Defendant Officers to arrest Plaintiff.

For these reasons, the Court finds that Defendant Officers had probable cause to arrest Plaintiff and grants Defendants' motion for judgment on the pleadings as to Count I of Plaintiff's amended complaint.

2. *Count II: excessive force*

Claims that law enforcement officers used excessive force while making an arrest, investigatory stop, or any other type of seizure of a person are analyzed under the Fourth Amendment's reasonableness standard. *Stainback v. Dixon*, 569 F.3d 767, 771–72 (7th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). Assessing whether the force used to effectuate a particular seizure is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 772 (quoting *Graham*, 490 U.S. at 396). The nature and extent of the force that may be used depends upon the circumstances surrounding the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). Courts must view these factors "as they would have appeared to a reasonable officer at the scene," *Id.*, recognizing that "officers often need to make split-second judgments based on rapidly developing events." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir.2007).

An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest, *Graham*, 490 U.S. at 396. But that right is circumscribed by the Fourth Amendment's insistence on reasonableness. *Stainback*, 569 F. 3d at 772. For example, "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Id.* (citing *Herzog*

*v. Vill. Of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002). Whether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of the arrest. *Id.* In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself. *Id.* (citing *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003). In other cases, it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest, such as if the officer knows an arrestee has medical problems. *Id.* But still, a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him. *Id.* at 773.

Having reviewed the two surveillance videos of the incident provided by Defendants, the Court finds that, viewed in isolation, they do not provide a clear enough view of the position of Plaintiff's arms during the arrest to uncontrovertibly contradict Plaintiff's claim that Defendant Officers used excessive force in placing him in handcuffs. (Dkt. 25, Ex. C, D.); *see Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). But even without relying on this surveillance footage, the facts alleged in the amended complaint, taken in light most favorable to Plaintiff, establish that the Defendant Officers' actions were reasonable under the circumstances surrounding his arrest. Placing an arrestee in handcuffs, even if his arm is pulled back "at an awkward angle," does not indicate that the Defendant Officers' used handcuffs in a manner that would clearly injure or harm a typical arrestee. (Dkt. 24.) Nor did Plaintiff inform the Defendant Officers that he had a preexisting injury or condition that would be aggravated if he were handcuffed. To that point, Plaintiff does not allege in his complaint that he complained about any pain during or after he was handcuffed. In fact, both the complaint and Defendants' answer admit that Plaintiff "did not resist being placed in handcuffs." (Dkt. 24, 25.)

Accepting as true that Plaintiff's arm hyperextended while he was being placed in handcuffs resulting in an injury to his shoulder that required medical treatment and physical therapy to treat, these complaints, offered well after the arrest, cannot have placed a reasonable officer on notice that Plaintiff would be injured by the act of being placed into handcuffs. As such, Defendant Officers' actions were reasonable under the circumstances and Defendants are entitled to qualified immunity on Plaintiff's excessive use of force claim.

For these reasons, the Court grants Defendants' motion for judgment on the pleadings as to Count I and II of Plaintiff's amended complaint.

### C. Plaintiff's state law claims

As is the case with claims of unlawful seizure under the Fourth Amendment, "the existence of probable cause also defeats a false-arrest claim under Illinois law." *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). Accordingly, because Defendant Officers had probable cause to arrest Plaintiff, Plaintiff's false arrest claim fails as well, taking with it Plaintiff's 745 ILCS 10/9-102 indemnification claim against Defendant Village of Alsip. *See Baden v. City of Wheaton*, No. 09 C 3015, 2010 WL 4931852, at *4 (N.D. Ill. Nov. 24, 2010) (Coar, J.), *aff'd*, 420 F. App'x 628 (7th Cir. 2011) (explaining that plaintiff's indemnification claim "must be dismissed because it is contingent on the success of her other [§ 1983] claims, all of which fail").

For these reasons, the Court grants Defendant's motion for judgment on the pleadings as to Count III and IV of Plaintiff's amended complaint.

**Conclusion**

For these reasons, the Court grants Defendant's motion for judgment on the pleadings as to all counts of Plaintiff's amended complaint [31].

**IT IS SO ORDERED.**

Date: 3/21/2025

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge